May it please the Court. The question for the CCA wasn't whether Petitioner's state habeas experts were more persuasive than her trial expert. The question is whether the steps trial counsel took to get expert funding were objectively unreasonable, and if they were, whether taking some different steps would have created a substantial likelihood of a different result in the proceedings. Can we ask you a first question before the Court? Should we stay this case pending so that the CCA can take action on the trial court's relief granted in the state? Because they won't do anything under their precedent unless we stay. So it seems like that's a first question of whether or not we should stay. So we don't think there's a need to stay, because as I understand their argument, what they're saying is that the CCA is not going to act until this Court rules. So whichever way this Court rules. That's absolutely the truth, right? Well, I don't, I can't speak for the CCA, but that's generally my understanding. The CCA spoke for itself and said that that's their procedure, and it's in a case, isn't it? All I can say is that whichever way this Court rules, up or down, that will solve the problem that they're complaining about. So today, this Court could issue an opinion that said or it could say, reversed, in stanter, opinion to follow. That would take care of the only question about what the CCA is going to do. But regardless, what the issues that she's arguing about what the CCA is handling, she's disclaimed that that involves any issue in this case, and she's relying on things that are outside of this record. So I think it's appropriate to focus on this appeal. We'd never have to rule on this appeal if, not that we, I mean, we like ruling, where that's what we do for a living. I mean, that's, we try to answer people's questions and problem solve, but we would never have to decide the issues in this case if the CCA affirmed the relief. That's not the question in front of the CCA. The question in front of the CCA is not to affirm the recommendation granting relief. And one of those decisions So, the fact that the district court has recommended granting habeas relief. So what's, what's, what is between them getting habeas relief and not, then? These are two different decision makers. One is the federal court that's bound by AEDPA, and under the standards of the cases applying AEDPA, that federal court was not within its power to grant relief here. The CCA can do what it will with petitioner's claims. Now, it's, remember, petitioner's already been back to the CCA at least once. It's not the Texas district court that granted the, it's the federal district court. Yes. Only the federal, the Texas district court hasn't ruled in their favor? I'm sorry, the test, maybe I misunderstood the question. A Texas district court has recommended granting habeas relief on different grounds. I'd like to talk If they get habeas relief from the Texas courts, then we never have to deal with the federal AEDPA issues, right? There are different issues, but I think that They've gotten the first round going their way, which is unusual, frankly. Judge, it's a different, it's a different question. What I want to focus on is the fact that It's not what you want to focus on. The question, we're asking you questions that are very important. So the question before you that you have to answer is why wouldn't we, in our discretion, hold the case? It would seem to me that every reason, instead of, if I'm not, correct me if any of these statements are wrong, every state habeas court has said vacate the conviction. There's been more than one. Every state habeas court? Every state habeas court has said, in fact, every habeas court of original jurisdiction, the federal magistrate, the federal district court, and every Texas state habeas court has said vacate. Is that correct? The CCA didn't. No, I asked you courts of original jurisdiction, every original jurisdiction. So how many state habeas courts have said this conviction should be vacated? How many state habeas courts? So those are recommendations. Yeah. Recommendations to two judges. And the latest one premised it on actual innocence and government misleading testimony. Judge, she's already been back to the CCA to try to relitigate a claim like that. That's where she is. So the questions that you've been asked is we're looking at a state highest court considering granting habeas relief. It would seem to me, in our discretion, that's exactly when federal courts stay out. Comedy, exhaustion, let the state habeas process finish itself. Constitutional avoidance, stay away from trying to interpret Ake and Hinton. And then we've got an unusual posture, not even factually, with the consensus of all experts, even one of the trial experts recanting, we've actually got an unusual posture of the DA and to let Texas sort its own bet out. It's a federal habeas court. This panel, the district court here, federal habeas courts that are governed by rules limiting habeas and AEDPA. Why wouldn't we, in comedy, for the same reason that we have AEDPA, say we should stop and wait and let the Texas process play out before opining at all? So I'd like to answer that with a comedy point that is really what speaks to the issue here. Comedy, right? We have a state court that considered the claims, heard her evidence, and applied existing Supreme Court case law to her claims and rejected them. And a federal district court called that result so incompetent that no judge could possibly disagree with it. That is an affront to federalism that must be corrected. But let's say you win in front of us. Let's say you win on everything. In other words, we don't hold our case. So then Texas dismisses under the two-form rule, and then you've prevailed as you win on the merits. All that does is restart the state habeas. I don't know that that premise is right because the CCA, to my knowledge, the CCA is fully within its power to just wait until this court rules. And there's no indication so far that the CCA has disposed of this case under the two-form rule. Judge O'Rourke is right. I mean, we have Texas CCA law saying what they do. We've quoted it in our own precedent. Under the two-form rule, they would dismiss it. They would show us comedy. I mean, that may be one thing. That's a dismissal without prejudice, right? It's a dismissal without prejudice. So even if you win on everything here, all it does is restart it there. So the whole EDPA premise of finality is actually hurt if you persist in the opposition to a discretionary abeyance. No, I disagree that the purposes of EDPA are hurt in any way by that. Remember that what happened in district court was the petitioner waited until there was a newly elected district attorney, and then without full adversarial presentation, jointly submitted proposed findings that were promptly adopted without any notice to the state or the federal district court in this case, even though there were motions pending. I'm slipping into your allegations on appeal that they somehow game the system. But there's no finding in federal or state court anywhere that they have. How would the federal court have had the opportunity? It was done without notice to the federal court, even though motions were pending in front of it at the time. Now, my point is neither in the magistrate judge's 50-page ruling or Judge Yackel or either the state habeas course have they said that Ms. Jimenez is trying to delay. That argument that she would be delaying makes no sense, right? She's been in jail for close to 20 years without her children, and she's been declared by state courts to be actually innocent. Why would she want to delay that? She's using new experts. Every time one round of experts doesn't work out, you go get new experts and then try again to present new habeas claims. There's no finality to that. I assume every year medical students graduate and could be different experts 20 years from now. Your expert, Ms. Peacock, herself had adjusted her testimony. Judge Higginson, I assume the CCA can make whatever it will of that testimony. I don't read her as recanting the testimony. The cause of death has not been disturbed, and there's still multiple other opinions that are undisturbed. What we have here is a district court, a federal district court that elevated this post hoc hindsight battle of the experts over the only question that really mattered, which was from the perspective of trial counsel at the time he was making funding decisions. At that time, what is it that he should reasonably have done and could have done differently? Those are the questions, ex ante, before you have a trial record to compare that to. This is getting to the merits, and then on the merits, why wouldn't, if I read Hinton, to be simply a straightforward application of Strickland? So it isn't new law, it doesn't postdate. Let's just say we accept Hinton. Why didn't Mr. Martinez make the same mistake that he misunderstood he could have asked for more, and we know that because the judge has said, yeah, I would have given him more? So the three ways— This is a merits issue, right? And I hope to have a chance to talk about the merits. You've got five minutes. So the Supreme Court explicitly limited the ineffectiveness in Hinton to a combination of three things. There was an inexcusable mistake of law that would have been fixed by simply looking up a statute, and it caused the continued retention and failure to replace an expert he knew to be unqualified. None of those three things happened here. And we have at least one panel of the Fifth Circuit in that Causey case reading Hinton a different way than either Petitioner or the district court did. And look, if all you want to read Hinton for is the proposition that inexplicable mistakes of law are bad, right, and we shouldn't encourage those, that general proposition, I'm not saying that didn't exist before 2014. It's the additional gloss that I think Petitioner is hoping to put on that. Texas law said you get two experts, and he hadn't known that and asked for one. That would be an exact Hinton overlay, right? It could be, but look at how is what the CCA did any different than what happened in Hinton? You look at whether you're entitled to the funding, quote, by law. And the CCA said you're not entitled to this funding by law. There's no constitutional right to a multidisciplinary team of forensic experts of your choosing. You're not ineffective in policy. And I'm just testing, because I don't know Texas law on indigent experts, but what about the fact in the record we've got a state judge saying, oh, I would have given him more? We don't have a judge saying, I would have given him more. We have a judge saying if he explained his need, that doesn't really help her in any way. It's all different ways of saying the same thing. What could the lawyer have actually put in a motion that would have gotten the extra funding? And we know it can't be from the state habeas record. The habeas record doesn't answer that question, because even though there are these two experts, Dr. maybe retained but didn't use the right steps. And we don't know from the habeas record what they would have said, whether they were available. And then we can't impute what the state habeas experts would have said. Let's say it would require a little inch beyond Hinton or a little inch beyond Ake. At that point, AEDPA says you win, right? Right. But let's assume it's not an inch beyond. Would you at least agree that given the consensus of state habeas experts that had they testified for her at trial, there's a reasonable probability this jury would not have convicted? Do you acknowledge that? No, I can't acknowledge that. And I'll say that for a couple of reasons. One, it's not even just the three experts. Remember, Judge Higginson, the district court was pretty clear in relying on this fourth expert, who petitioner never said trial counsel could have even hoped to retain. I'm asking you to assume you have the best national experts on pediatric airways, every single one of them at trial saying not only could it have been a choking accident, it's likely it was. You still don't think the jury, there's a reasonable probability the jury would have changed outcome? Absolutely not. I do not think so. They all still have the same problem explaining how it's five sheets, intact string of paper towels that a 21 month old boy supposedly managed to get into a choking hazard and choke himself to the recording. I'm holding out my hands to indicate about the size of how many towels that is. It's not plausible. You don't dispute what the state habeas court said, which is that she had no priors. She wasn't using substance abuse. She's pregnant with her own child there. And even the state habeas court says she had no motive. So I'll give you a question. What was the government's proof of motive to choke to death this little kid as old as hers when she's babysitting him? What was the motive? Can you tell me that at trial trial? I don't think the court had to, I think judge Higginson, the motive to do it. I don't believe that it was one of the elements that the state had had to definitively say exactly why that's not the argument she's making. I'm asking you the state habeas court said there was no motive. I assume you're attacking the statements in the CCA was just tell me what at trial, even in closing argument, the government said was her motive to stuff the towels in the child that she was babysitting. And I don't recall. And that may be what it, that may have been what was driving the district courts opinion in this case, but it doesn't matter whether the district court had a reasonable view. All that matters is, is it the only possible reasonable view? We're not asking this court to definitively say what experts you're entitled to. We're not asking the court to definitively say what you should have done differently at trial. Is it going to resolve all of this? Not necessarily. It has to re it has to overcome all of the reasons that the CC always does, which says you might win if you're that confident about your position, the CCA, and that will move this case. Whereas if you win here, it doesn't their case and it doesn't need to. And we don't need that to win this case. And we shouldn't have to, because what the district court did was an affront to federalism and it needs to be corrected. I have three quick questions. Okay. I'm just, I'm going to ask the other side of these questions too. Your cost claim fails because there was no bill of cost yet, right? I don't think that's necessarily right. It doesn't fail. I have, I've got three claims. I want to try to get some resolution on real quick. Sure. One is cost. Do you have a case that says that your cost claim doesn't fail because, because it seems like it would, because there's no bill. So their argument is there's no bill. So if I, if they're saying, we're not seeking costs and they're willing to represent that, I guess that resolves it. But they're also asking for a remand if this case doesn't go their way. So I don't know how that could put a... You don't think it's right? You're not saying you're entitled to cost this very day? This very day? No. Yeah. Okay. Actual innocence, um, Reed v. Stevens, you, you win on actual innocence because we don't have a freestanding actual innocence claim, correct? Right. Yes. Okay. A freestanding Ake claim, uh, that it overlaps with the other claim with the Strickland. And so there's no really, there's no difference and we don't adjudicate that. Is that correct? I'm not sure I understand that. Because if rises or follows with a Strickland related Ake claim, there's not a separate basis to have a freestanding one. Right, but... Is that, so is that, or do you disagree with that? No, that, that's right. But there's an additional reason it fails and that's because it's Teague Barred. So it fails doubly. So that's, those are the three manner. And so thank you. And I'm going to ask the other side, those three questions too. Thank you. Okay. Thank you. Good morning, Your Honor. And may it please the court, Sarah Tatum for Petitioner Rosa Jimenez. I want to talk about the stay in a minute because I think it's a really important part of this case, given the way that it's coming to the court. But I do want to be very clear about what our federal habeas relief, particularly in light of the high bar that is posed by EDPA. This case turned entirely on expert testimony. The only question was whether it was possible that BG could have accidentally choked on the wad of paper towels. Even the CCA recognized that. But Petitioner's counsel failed to ask for expert funds that he knew that he needed and that he Absolutely. I do think we have asked for a stay. We asked for that stay in February, as soon as we got the decision from Judge Sage. And I do think that a stay is consistent with principles of federalism and comedy. So we don't get to any of these issues now and they may be taken care of in the state. I do think a stay is the most consistent outcome with EDPA, but obviously we, our final goal is to get our client's unconstitutional and unjust conviction vacated finally and formally, as expeditiously as possible. But you filed a motion and you gave argument. What's the best authority for our, in other words, of course this court and our panel, we do it all the time. We obey cases waiting for highest courts, especially to rule even in unrelated cases. But this has the EDPA overlay and EDPA does favor finality. Opposing counsel said this will speed it up if we happen to decide in their favor. Yeah. What's the best authority for why this court should use its inherent authority to stay? Yes. Well, I think we said, we cited, there isn't a really great case exactly on point. I think Pullman, for example, in the civil context, but it's not a great fit. Rines is also not a great fit, but it's this idea that pursuing one set of remedies may preclude another in the EDPA context. And so federal courts will stay to allow state petitioners to go back to state court. So I think you can kind of get there with those. But I do think that just general principles of federalism would favor allowing the state court to remedy what is clearly an unconstitutional conviction. What's going on in state court right now is the executive that prosecuted petitioner and the state court that ultimately presided over her trial are in the process of remedying this unconstitutional conviction. And this court, it would be entirely within this court's discretion to stay this case and let the CCA finally rule. If the CCA rules in favor and accepts the recommendation, will there be a retrial or does the actual innocence mean that there's possibly no opportunity to retry? My understanding is that the actual innocence means that there would not be a retrial and the come in on our side in state court. So my understanding is there would not be a retrial. The state said, I think Judge Higginson, you asked the state about what would happen if the CCA dismissed the case. And we would have to start over under the two-form rule. Just reinstated in that court or start over back at state habeas? Do you know what I mean? Usually when we have a federal rule, it's a Fifth Circuit local rule that we can dismiss a case without prejudice to reinstate it. It comes right back to us. I didn't understand on their two-form rule, does it start at the beginning or does it go right back to the CCA? So I actually don't know the answer to that question. I think it probably turns on whether the CCA treats it, the two-form rule, as a mandatory jurisdictional rule or whether it's just a permissive abstention doctrine. And we don't really know the answer to that question. The CCA hasn't been clear about that. If it's a jurisdictional rule, then I would imagine that we would have to start- A comedy deference for us to obey is not jurisdictional. It's just we're deferring- Correct. You probably looked in our law a lot. I found a case, 2005, Gomez v. Dredke, written by Judge Smith, not familiar with it. In a footnote, he acknowledges this exact situation, that there's the two-form rule and therefore federal courts might want to hold an abeyance. But I didn't see sort of engagement in the motions with the law that much. Both of you saying it's sort of our discretion. Yes, Your Honor. I'm happy to go back and if it would be- No, no, no, no, no. That's all right. It did seem to me that there wasn't any binding case law on this court that instructed this court what it must do. And it did seem that it would be within this court's discretion to manage its docket. If we get to the merits, I mean, let me just sort of be blunt that the magistrate here primarily did the work. Judge Yackel, I'm sure, looked at it all. There are immense sort of compelling facts. On the other hand, strictly interpreting edpa deference, you have to convince us that either Ake or Hinton stand for the proposition that relief is clearly established, correct? Well, more than anything before Hinton. What? More than, I mean, Strickland or other cases that predate- But he did get, he got, Martinez got an expert. But so did counsel in Hinton, so did the issue, and this gets to the issue of what was the error of the CCA. And so I'm happy to talk about that because it sounds like that is the crux of the issue here. Under Hinton, once we're in de novo review, it's a straightforward case. Counsel obviously didn't understand the resources available to him. There was an error of law. But as Judge Higginson, you're pointing out, we have edpa. And so the issue is what is the error of the CCA? The CCA on my read essentially said, you don't, you were not prejudiced because you did not have a right to these funds under Ake. And so you couldn't be prejudiced. But that is not the Strickland standard. The court said the issue is whether there's a high likelihood or high risk of an inaccurate verdict. It said, surely these experts would have been helpful, but you can't show that there would be a likelihood of a different result. That is not the Strickland standard. The Strickland standard is a reasonable probability of a different outcome. I may see you on that, but I guess, where am I not missing it when I, the CCA seemed pretty sensitive. It said, we don't like that the government might outgun 4 to 1, but Ake just guarantees indigents a qualified expert. He gets a qualified expert and the Texas court said under Texas law, that's what he gets. So how is that not a reasonable interpretation of Ake and Hinton? Because the issue isn't whether petitioner was entitled to the funds under Ake. The issue is whether she might have gotten them had counsel performed adequately. Under Strickland, you have a right to have effective assistance of counsel. Counsel must perform adequately. And if he doesn't. They found that Kaffner was qualified and effective. In fact, he said exactly what these later experts said. Maybe he had profanity and at trial he blew up, but we can't find IAC in terms of securing expert based on the later poor performance of the expert, can we? I think that you can, Your Honor, because the question under Strickland is whether counsel performed efficiently in retaining, in how he went about seeking and the CCA in this case seemed to think that petitioner had to. What's the best case that says you can, I mean, you're alleging ineffectiveness in securing expert counsel. What's the case that says, well, you can determine ineffectiveness pre-trial by how the expert does at trial? Well, I think that's just the prejudice analysis that's, I think, Hinton itself. I know, but you got to get by the performance failure. Absolutely, Your Honor, but I mean, we also have to get by EDPA and I think the CCA in this case thought that petitioner had to establish that she was entitled to the funds under AIC and in reality, she only had to show that she might have gotten them. Under Texas law, it was entirely within the judge's discretion to provide additional funds. He wasn't bound by AIC. If counsel Martinez had gone in and made an adequate request when he knew that he needed these experts and he knew that he needed somebody with expertise in the mechanics of choking, pediatric expertise, if he'd filed a motion that was, that complied with Texas law. Now, we know Alabama law says you get more money and the lawyer was, quote, unmistakably wrong. But when you say Texas law will give an indigent more than the one qualified expert, what are you pointing to? What's the scenario? It's not, it's, sorry, just to be clear, Your Honor, it's not a will. It's just that she might have gotten it. But I thought Hinton was all about the will. The guy didn't know the law. I don't believe the statute in Hinton was a mandatory statute. It's just, it's the same statute as here where if you ask the judge in Alabama, it's within their discretion to provide more funding. Judge Wisser in this case wasn't bound by AIC. He could have given 10 experts if he thought that they were necessary and reasonable under Texas law. So that's the fundamental error of the CCA's prejudice analysis. Petitioner doesn't have to establish an in order to establish a Sixth Amendment violation under Strickland. Under Strickland, you just... Had he already gotten CAFNI when he filed these poorly drafted oral requests or whatever? Had he already gotten CAFNI? I don't believe so. It's not... That's pretty important, isn't it? Well, so my understanding of the record is that he filed these motions in the fall of 2003 and one of them was granted without really any, no specifics about the amount of funds, no specifics about who the experts were. That gets us CAFNI. Well, first it gets Dr., I think his name is Dr. Edwards, and he somehow falls through. And then Dr. CAFNI, who does have pediatric expertise because obviously the counsel Martinez recognized that he needed somebody with pediatric expertise. In fact, his original motion said that the mechanics of choking, it's beyond the expertise of forensic pathologists. He recognized that a forensic pathologist wouldn't have the expertise that he needed. And so then almost a year later, you see in the appendix to his affidavit that he's having trouble getting experts with pediatric expertise. He says this in his continuance motion, I can't find somebody with expertise in pediatrics. And then he tells Judge Wisser, I was very upset. I really wanted Dr. Norton to testify, and she has pediatric expertise. And so finally in the fall of 2004, more than a year after he filed these original deficient motions, and he has not filed any other motions during this period when he's trying to get an expert unsuccessfully. Finally, it looks like somehow he ended up with Dr. Camper, who again he did not have the right expert, exactly like counsel in Hinton. He didn't make adequate motions under Texas law to ask for funding, and so he was just ignorant of the funds that might be available to him. It's the exact same issue as in Hinton. So that brings me back to what was the CCA's error. On de novo review, this is a straightforward case. But as Judge Higginson, you've been focusing on, we have to get around EDPA. And there I do think the error is that the petitioner had to establish an entitlement under AIC to these funds to establish that she was prejudiced. And that is just not Strickland. You look... I've asked a lot. No, no, no, no, I've asked a lot. Just back to that fundamental EDPA question. You have to demonstrate that the CCA's conclusion that Ake did not entitle your client to additional expert assistance was so unreasonable that there is no possibility fair-minded jurists could disagree. And in order to do that, you must also use a holding of a prior decision of the court. So how have you done that, and what is holding of the prior decision of the court? So I think the issue is that petitioner doesn't have to establish that there was an Ake violation. This clearly established federal law that we're relying on is Strickland itself. The question just is, if counsel had performed adequately, is there a reasonable probability of a different outcome? And that does not turn on whether or not there was an underlying Ake entitlement to these funds. And if you'll indulge me in citing a case that we did not cite in our brief, but it's fairly well known, I'd point the court to the Lafleur against Cooper and the Frye against Missouri cases, which came out just before the CCA's decision. And they applied the principle from Williams, which we do cite, which is the idea that you don't have to show that you're entitled to something for your counsel to have been effective in failing to ask for it. If there's a reasonable probability that had counsel . . . I think one gives away, one takes. Everyone takes, one gives away once you give something, because in those cases, all the post-Lafleur cases, they haven't been able to show with the affidavits of the judges, and so those don't ever succeed in real life. I'm not saying there's not a world in which one case, and so people could bring those cases, but because you have to have that proof, that it would have resulted in the other outcome. So those are not actually great examples, because you have to have this proof that is almost impossible to obtain. I agree, Judge Alwatt. The plea bargaining context is a very difficult context to figure out what the remedy is when you have deficient performance. And the other side is allowed to file a 28-J within three days on Lafleur and the other case, if they wish to, because you cited precedent that was not in your brief. I thought Judge Yackel said this is just Hinton. This is Hinton. On the merits, I do think this is Hinton, Your Honor. That's been our argument all along. This is a straightforward application of Hinton, and we believe that Hinton was just a straightforward application of Strickland. And remind me, what did the CCA say? This isn't Hinton because . . . Sorry. Go ahead. Go ahead. And even when you went up on cert originally, from the first CCA loss, Hinton wouldn't have come down, right? I don't know, Your Honor. I suspect . . . I mean, the CCA's decision was, I think, I want to say May of 2012, and Hinton was in 2014, so I doubt. So you can't use Hinton. You have to get Hinton. So to the extent the district court did, that's a problem. Well, I don't think . . . we can use Hinton, so long as Hinton is just straightforwardly applying Strickland, and Hinton was straightforwardly applying. Strickland, it said so itself. The cert petition, Hinton didn't even ask for the court to do anything other than justify Strickland, and certainly the court in a per curiam opinion, I don't think that the Supreme Court would be thinking that it was creating new law by just issuing a per curiam. So if it is just Strickland, finish the sentence, Martin has performed inadequately because . . . Because he didn't understand what resources were available to him under the law, exactly like counsel in Hinton. That is deficient performance. If there's one thing . . . What if CCA says, yes, he did, because Texas gives you one qualified expert, even if that's one against four? What if that's what they said? Why is that unreasonable? Because the CCA was interpreting AIC. It wasn't interpreting Texas . . . Isn't that a fair interpretation of either AIC or Texas law? And if it's not of Texas law, where? Where is the case or the statute that says you get more than one qualified expert? Well, the Texas statute is Texas Code of Criminal Procedure, Article 2605D . . . 2605D . . . And 2605 . . . 052F and G. D is the non-capital case, non-capital assistance, and F and . . . Tell the CCA that it interpreted Texas law wrong. I know, Your Honor . . . You can't do that. That's a . . . You know, there are fundamental legal principles that say we can't do that. Absolutely, Your Honor. I do think it is a little odd, though, that the CCA said in its decision that there wasn't a statute for a non-capital case. And unless I'm . . . it's absolutely possible that I'm incorrectly finding this on Westlaw, but when I looked at the effective statute in 2004 or 2005 . . . It's neither here nor there for us. I understand. And we don't . . . our case doesn't rise and fall on this. It is . . . as a matter of Texas law, I don't think anybody would disagree that it was within the judge's . . . Judge Whizzer's discretion to provide additional funding. And we have an general practice to do so. And if he had been presented with a proper request, he likely would have granted it because he did have this rough justice approach to experts, and he did usually give one for one. And so that's the deficient performance, Judge Hickinson, is that Counsel Martinez knew that he needed somebody with pediatric expertise, and he didn't make a request. He made these facially deficient requests over a year before the time when he was actually obtaining the expert, and then two years before the trial. And all the while, the record shows that he was struggling to find someone with expertise in pediatrics. Dr. Norton was unwilling to come and testify because she hadn't been paid in previous cases. Before you finish up, just . . . because I asked a couple of questions factually opposing counsel. In the state habeas, when I guess it's now seven experts have all said it's possible, likely, did the government, did Texas traverse them at all? Is there any cross? Did they put any experts on to try to reiterate what their trial experts had said? In the state habeas, the first round in front of Judge Baird, they did. And they even, they had, for example, I think they had an ENT. But Judge Baird found that none of those, as a factual matter, that the state's experts at that habeas hearing did not credibly rebut. What happened when these national experts came in the latest round? The DA did not. It was agreed findings. Oh, right. The DA agreed. My only other question is, and I asked him repeatedly this, you must know the trial record. Is the state, what was the government's theory of motive? There was no theory of motive. You can read the entire trial record. There's no theory of motive. This case turned entirely on the forensic evidence. The state's experts got on the stand and said it is impossible, it is physically impossible that this was an accident. The physics of it are impossible. That's what the experts said. And obviously now this isn't in front of the court, but that's been disproven. That was the grounds for relief in January, that this was false testimony. It would be as if you stood up and said, we have three arms. It's just not, it's not accurate medical testimony. There was no motive, Your Honor. This turned entirely on expert testimony. Counsel, you've got, I've got my four quick questions. Costs. My understanding. Sorry, Your Honor. Is that just not right? My understanding is we've not asked for costs. We haven't presented a bill. So whether you want to consider it as we've waived that or it's not right, but I don't believe it's properly before the court. Actual innocence is a loser under Swearingen and Reed v. Stevens, et cetera, isn't it? Well, we would preserve that argument. That's why we've pressed it here. If you want to take it to the, to the, our bettors one day, maybe. Okay. And a freestanding ACA claim. You're not really asserting any different freestanding claim, are you? Well, we are, Your Honor. And that was certainly grounds for relief below, but I think it's an, we presented it as an alternate holding, an alternate request for relief. And we think that the ineffectiveness. I would never get to it if it, it either loses or we don't get to it. It's, I don't see that it has its own legs. Well, this court would have to get through the procedural default. And I think there's reasons why the court, why we would meet that standard, whether it's the miscarriage of justice or cause and prejudice. But I do think that ineffectiveness, ineffective assistance is clearly the better grounds for relief here. The other side said that actually this is impossible, this theory still today that you say that it's not impossible and that this is all being trumped up when people in cahoots with one another. Did you want to answer that? Well, if to answer that, I think the best answer is evidence that's not before this court, which I'm happy to provide to you, but I do, do you, is that okay? No, I'm just, it didn't, wasn't that at the end of the argument? It was, and I would say that the best rebuttal to that is the testimony in front of Judge Sage where you had the... Okay, so you have some, you have a legal basis for making this argument today. Absolutely, Your Honor. And Judge Sage found that she's actually innocent after hearing that, and we're happy to submit that. I mean, the merits of her actual innocence claim are not before the court, or her most recent actual innocence claim.  Thank you, Your Honors. Counsel, you still have time for a rebuttal. If the court would let me have it, then... Why wouldn't we? Well, I was answering a few questions after my time had expired, so I appreciate it. Thank you. So I think the question toward the end got into this idea that Strickland is really what's driving the whole train. The claims rise or fall under Strickland. I think that's the exactly correct way to look at the merits of this case. I heard the other side have their preferred reading of Hinton, that Hinton somehow implicitly did away with all the body of case law saying that before you complain about motions practice, you've got to have an actual underlying substantive claim for relief. And even if that were one way to read Hinton, it can't be the only one, because even the district court here continued to Turner versus Quarterman that say it's per se not ineffective to fail to file a motion or to do motions practice wrong if you're not substantively entitled to the relief. And that's the analysis the CCA did when it said, you're not constitutionally entitled as an indigent defendant to a multidisciplinary team of forensic experts. Your lawyer's not constitutionally required to seek it. And remember, it's not just expanding AIC here to forensic experts. It's expanding AIC about five ways. It's forensic experts, multiple forensic experts of the defendant's choosing to reach specific opinions and testify at trial. There's no court... No, I mean, what the record reflects is the guys just saying, I need a pediatric expert. I need it. I need it. And then they've gotten an affidavit from a judge who said, I would have given that. How is that not sort of right on top of Hinton? Yeah, the problem with reading Hinton that way is it doesn't track what the district court's analysis actually is. If you add up the pieces, right, to get all the opinions to where you say she'd be satisfied, it's more than one person, right? And two, there's nothing so clearly established in federal law about the qualifications or experts or what makes them persuasive that you can't say that the CCA reasonably looked at Dr. Canfor's disturbed findings and said that this Martinez reasonably retained Dr. Canfor. He may not have been a specialist with every bit of specialization that petitioner could have hoped for, but he was qualified to testify. And that's a question of state law. That's not appropriate for a federal habeas court to disturb. What about the she cited Texas code provisions that appear to entitle you to more, making it unmistakable this was an error? I was not immediately familiar with those code provisions, but all I know is that the CCA surely is the arbiter of what expertise is available under state law. And in fact, there's an 11th Circuit case, I think we cited, it was Gary or Gray versus Hall, that it said that since the U.S. Supreme Court has declined to constitutionalize the indigent's right to defend it, that any time you're asking for a right to forensic experts, that's a question that's committed to state law. A state can't answer that unreasonably. So whatever a statute says, if a state's highest court says you're not entitled to this funding, that's an authoritative statement from the state's highest court that the proposed objection would have been meritless. And that's Turner. That's almost a direct quote from Turner. And even the district court cited Turner. But Ake would make it unconstitutional if the highest court said you get no expert to face the government's expert. I don't even know if that's true. I mean, there could be a strong argument that that's a case. But unless the Supreme Court says that, if all we can say is that's the next logical step of what the Supreme Court would do in the next case, I think this Court's en banc precedent and Supreme Court precedents say you can't fault a state court for failing to extend it. I went back and looked up the question on a motive, for example. So I think in Vordire, for example, it was like at ROA 1634, you know, we've got the prosecutor explaining you're not going to see a motive element in the charge because the state's not required to prove why somebody did something. And as far as going back down to the CCA with additional experts, remember, I think you can look at ROA 425. This petitioner had already, during the pendency of these habeas proceedings in federal court, tried to go back to the CCA with a claim that there was false evidence and that was procedurally barred. Because no matter how different or whether you get more experts, there are still separate rules about procedural bar that the CCA follows. That's pending in front of the CCA right now. Sure. But as far as this idea that there's consensus experts and new experts, remember, at least one of those experts is overlapping between what Judge Baird heard back in 2010 and now. The CCA had every opportunity to do what it would with this claim that she was innocent. It had that opportunity based on that evidence and it declined to. Thank you.